# UNITED STATES COURT OF INTERNATIONAL TRADE

PIT BARREL COOKER CO. LLC,

*Plaintiff,*

*v.*

THE UNITED STATES OF AMERICA, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT in his official capacity as Commissioner of U.S. Customs and Border Protection,

*Defendants.*

Case No.: 1:26-cv-04246-RKE

**AMENDED COMPLAINT**

For its complaint against Defendants the United States of America, U.S. Customs and Border Protection ("CBP"), and Rodney S. Scott in his official capacity as Commissioner of CBP (together with the United States of America and CBP, the "Government"), Plaintiff Pit Barrel Cooker Co. LLC ("Pit Barrel"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. Pit Barrel brings this action to challenge the assessment of and to demand a full refund, with interest, of all tariffs imposed by the Government pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., upon products that Pit Barrel imported into the United States.

2. Beginning in February 2025, the President of the United States, through a series of executive orders, invoked IEEPA as authority to impose new and substantial tariffs on goods imported into the United States from nearly every foreign country, including countries from which Pit Barrel sources its imports.

3. Pit Barrel was responsible for paying IEEPA tariffs on its imported goods and in fact paid such tariffs.

4. In February 2026, the U.S. Supreme Court held that IEEPA does not authorize the President to impose tariffs.

5. Because the tariffs assessed and collected under IEEPA on Pit Barrel's imports are unlawful, Pit Barrel is entitled to a refund of any and all such tariffs that Pit Barrel has paid, plus interest.

6. Pit Barrel hereby seeks relief directed only to Pit Barrel's own entries: a declaration that the challenged IEEPA tariffs were unauthorized as applied to Pit Barrel; liquidation or reliquidation of the affected entries without those tariffs; refunds of all resulting overpayments, less amounts already refunded, if any; and the interest required by 19 U.S.C. § 1505 and other applicable law.

**PARTIES**

7. Plaintiff Pit Barrel Cooker Co. LLC is a California limited liability company with its principal place of business in Murphys, California. Pit Barrel was the Importer of Record ("IOR") for the entries at issue and deposited or paid the challenged IEEPA duties. As the IOR that paid the IEEPA tariffs, Pit Barrel is legally entitled to the associated refund claims and is the real party in interest.

8. Defendant United States collected the challenged duties and retains some or all of the amounts for which Pit Barrel seeks refunds and is the statutory defendant under 28 U.S.C. § 1581(i) and 5 U.S.C. § 702.

9. Defendant CBP is a component agency of the U.S. Department of Homeland Security. CBP is responsible for administering the customs laws, assessing and collecting duties on imported merchandise, liquidating entries, reliquidating entries when authorized, and issuing

customs refunds. CBP assessed and collected IEEPA tariffs on entries for which Pit Barrel was the IOR.

10. Defendant Rodney S. Scott is the current Commissioner of CBP and is sued solely in his official capacity as such. The Commissioner is responsible for CBP's administration of the challenged tariff measures and the processing of resulting liquidations, reliquidations, and refunds. The Commissioner oversaw CBP's assessment and collection of IEEPA tariffs, including such tariffs paid by Pit Barrel.

**JURISDICTION**

11. This court has exclusive subject-matter jurisdiction under 28 U.S.C. § 1581(i)(1)(B) because this action is commenced against the United States, its agency, and its officer and arises out of laws providing for tariffs, duties, or other taxes on the importation of merchandise for reasons other than the raising of revenue.

12. In the alternative, this court has exclusive jurisdiction under 28 U.S.C. § 1581(i)(1)(D) because this action concerns the administration and enforcement of the tariffs and duties described in § 1581(i)(1)(B).

13. The challenged executive orders directed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"). Such modifications are treated as statutory provisions of law and supply jurisdiction under 28 U.S.C. § 1581(i)(1). *See* 19 U.S.C. § 3004(c)(1)(C).

14. Under 28 U.S.C. § 1585, the court possesses all powers in law and equity of a United States district court. Under 28 U.S.C. § 2643(a)(1), the court may enter a money judgment against the United States in any civil action commenced under § 1581. Under § 2643(c)(1), the court may order any other appropriate relief, including declaratory and injunctive relief.

## STANDING

15. Pit Barrel suffered a concrete monetary injury when, as IOR, it deposited or paid the challenged IEEPA duties on its entries. Pit Barrel is thus "adversely affected or aggrieved" by agency action and is entitled to commence this suit pursuant to 28 U.S.C. § 2631(i) and 5 U.S.C. § 702.

## TIMELINESS

16. Actions brought in this court under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

17. The first executive order imposing IEEPA tariffs was issued in February 2025, less than two years ago; thus, this action is timely commenced.

## FACTUAL ALLEGATIONS

### A. The President Imposes Tariffs Under IEEPA by Executive Order

18. In 2025, the President invoked the National Emergencies Act, 50 U.S.C. §§ 1601 et seq., to declare two national emergencies: one related to drug trafficking, the other related to trade deficits.

19. The President deemed each such emergency to be an "unusual and extraordinary threat" to the United States.

20. To respond to these two threats, the President imposed, by executive order, a variety of tariffs under the auspices of IEEPA.

21. IEEPA permits the President, upon declaration of a national emergency, to take certain actions to address an "unusual and extraordinary threat."

22. Specifically, IEEPA states that the President may, "by means of instructions, licenses, or otherwise," take the following actions to "deal with" such a threat: "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent

or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. §§ 1701(a), 1702(a)(1)(B).

23. With respect to the drug trafficking threat, the President imposed, by executive order and pursuant to IEEPA, a 25% tariff on most Canadian and Mexican imports and a 10% duty on most Chinese imports.

24. With respect to the trade deficit threat, the President imposed, by executive order and pursuant to IEEPA, "reciprocal" tariffs "on all imports from all trading partners" of at least 10%, and higher in the case of imports from some nations.

25. Since initially imposing each set of IEEPA tariffs, the President issued additional executive orders setting increases, reductions, exceptions, and other modifications.

26. As part of implementing the IEEPA tariffs, the President's executive orders invoked the President's statutory authority to embody tariff changes in the HTSUS.

27. Specifically, the executive orders require goods subject to the IEEPA tariffs to be entered under new tariff codes within chapter 99 of the HTSUS.

**B. CBP Implemented the President's IEEPA Tariffs and Collected Duties**

28. CBP is charged with the assessment and collection of tariffs.

29. When products enter the United States, CBP is responsible for assessing and collecting any tariffs (including IEEPA tariffs) on the imported products based upon the tariff classification of the goods and according to the rates established by the HTSUS.

30. Upon entry of products into the United States, the importer of record declares the products' value, origin, and HTSUS classification and pays an estimated duty on the entry based on that information.

31. CBP reviews the importer's declaration and subsequently fixes the final appraisement of the products' value, classification, and duty rate, and the amount of the duty.

32. Once CBP determines the final amount of the tariff due, CBP "liquidates" the entry and notifies the importer of record of the liquidated amount and whether the importer is entitled to a partial refund (if the liquidated amount is lower than the estimated duty the importer paid) or must pay an additional duty (if the liquidated amount is higher than the estimated duty the importer paid).

33. In compliance with the President's executive orders described above, CBP has assessed duties consistent with the IEEPA tariffs as set forth in the HTSUS and has liquidated entries with duties imposed and collected by CBP pursuant to IEEPA.

**C. The U.S. Supreme Court Invalidates the IEEPA Tariffs**

34. On May 28, 2025, a three-judge panel of this court held that IEEPA does not authorize the President to impose tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade).

35. The government appealed the court's decision and on August 29, 2025, the U.S. Court of Appeals for the Federal Circuit, sitting *en banc*, affirmed this court's holding that IEEPA does not authorize the President to impose tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

36. The government sought and was granted a writ of certiorari by the U.S. Supreme Court, which consolidated the V.O.S. Selections case from this court with another challenge to the IEEPA tariffs. *See Trump v. V.O.S. Selections, Inc.*, 146 S. Ct. 73, 222 L. Ed. 2d 1231 (2025).

37. The Supreme Court issued its opinion in the consolidated cases on February 20, 2026. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 146 S. Ct. 628, 224 L. Ed. 2d 51 (2026). The Supreme Court affirmed the judgment of the Federal Circuit and likewise held "that IEEPA does not authorize the President to impose tariffs." 607 U.S. at 255.

38. The Supreme Court's controlling opinion in *Learning Resources* provides no instructions as to how an importer of record may obtain a refund, with interest, for IEEPA duties unlawfully assessed and collected.

**D. The Government Refuses to Refund IEEPA Duties with Respect to Certain Entries**

39. Since the Supreme Court's decision in *Learning Resources*, the Government has undertaken to entertain refunds for certain categories of entries pursuant to various iterations of a program that the Government calls Consolidated Administration and Processing of Entries ("CAPE"). CAPE has been deployed in different "phases," with each "phase" designed to facilitate refunds for specific categories of entries.

40. Currently, certain types of entries are not eligible for refund under any CAPE phase.

41. Furthermore, the Government has challenged this court's power to order universal relief to those importers that have not filed a lawsuit against the Government for a refund of IEEPA duties.

**E. Pit Barrel Paid Unlawfully Imposed IEEPA Tariffs, Which Have Not Been Refunded and Which Are Not Currently Eligible for Refund Under CAPE**

42. Pit Barrel filed entries subject to IEEPA duties and reported the associated HTSUS codes to CBP.

43. Pit Barrel has been assessed and has paid large sums in IEEPA tariffs in connection with entries that have not been refunded.

44. Pit Barrel is informed and believes that, currently, none of these entries are eligible for refund under CAPE. Although it is possible that a future phase of CAPE will provide for refunds for such entries, this is not a certainty, and Plaintiff seeks relief through this court to assure a refund.

**STATEMENT OF CLAIMS**

**COUNT ONE:**
**<u>Declaratory Judgment</u>**

45. Pit Barrel incorporates all the foregoing allegations by reference.

46. The court has the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

47. Pit Barrel has been assessed and has paid tariffs illegally imposed by executive order of the President pursuant to IEEPA.

48. IEEPA does not authorize the President to impose tariffs.

49. The President's executive orders imposing tariffs pursuant to IEEPA lacked statutory authority.

50. The corresponding HTSUS modifications were unauthorized and contrary to law to the extent they imposed IEEPA tariffs on Pit Barrel's entries.

51. CBP's assessment and collection of IEEPA tariffs on Pit Barrel's entries were unauthorized and contrary to law.

52. The Government has no lawful basis to retain IEEPA duties paid by Pit Barrel.

53. Pit Barrel's claims herein present an actual controversy as to the President's authority under IEEPA to impose tariffs and the authority of the Government to collect and retain duty payments made pursuant to the unlawful IEEPA tariffs.

54. Pit Barrel is entitled to and demands a declaration that the Government's assessment, collection, and continued retention of IEEPA tariffs are unlawful as applied to Pit Barrel.

**COUNT TWO:**
**Refund Demand**

55. Pit Barrel incorporates all the foregoing allegations by reference.

56. Pit Barrel has been assessed and has paid tariffs illegally imposed by executive order of the President pursuant to IEEPA.

57. IEEPA does not authorize the President to impose tariffs.

58. The President's executive orders imposing tariffs pursuant to IEEPA lacked statutory authority.

59. The corresponding HTSUS modifications were unauthorized and contrary to law to the extent they imposed IEEPA tariffs on Pit Barrel's entries.

60. CBP's assessment and collection of IEEPA tariffs on Pit Barrel's entries were unauthorized and contrary to law.

61. The Government has no lawful basis to retain IEEPA duties paid by Pit Barrel.

62. Pit Barrel is entitled to liquidation of all unliquidated Pit Barrel entries (if any) with respect to which IEEPA duties have been assessed, without regard to the IEEPA tariffs.

63. Pit Barrel is entitled to reliquidation of all liquidated Pit Barrel entries (if any) with respect to which IEEPA duties have been assessed, without regard to the IEEPA tariffs, including entries whose liquidation otherwise would be treated as final.

64. Pit Barrel is entitled to refunds of all resulting excess deposits and payments, less amounts already refunded (if any), together with interest accruing from the dates of deposit through liquidation or reliquidation. 19 U.S.C. § 1505(b) & (c).

65. If the refunds are not paid within 30 days after liquidation or reliquidation, Pit Barrel is entitled to delinquency interest. 19 U.S.C. § 1505(d).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Pit Barrel Cooker Co. LLC respectfully requests that the Court enter judgment in favor of Pit Barrel and against the Government, as follows:

A. Declaring that any and all tariffs assessed pursuant to IEEPA on Pit Barrel are unlawful;

B. Enjoining the Government from assessing any tariffs pursuant to IEEPA on Pit Barrel entries;

C. Directing the Government to reliquidate each and every liquidated Pit Barrel entry with respect to which IEEPA duties have been assessed, without regard to the IEEPA tariffs, including entries whose liquidation otherwise would be treated as final;

D. Ordering the Government to refund to Pit Barrel all IEEPA duties deposited or paid by Pit Barrel, less any principal amounts already refunded;

E. Ordering the Government to pay to Pit Barrel interest on deposits, accruing from the applicable deposit date through liquidation or reliquidation;

F. Ordering the Government to pay to Pit Barrel delinquency interest on any refund not paid within 30 days after liquidation or reliquidation;

G. Awarding Pit Barrel its reasonable attorneys' fees under 28 U.S.C. § 2412 and any other applicable law;

H. Awarding Pit Barrel taxable costs; and

I. Granting Pit Barrel such other and further relief as the Court deems just and appropriate.

DATED: October 7, 2026

**FENNEMORE CRAIG, P.C.**

*/s/ Leslie A. Glick*

Leslie A. Glick
1500 K Street, 2nd Floor
Washington, D.C. 20005
Telephone: (202) 220-2468
Facsimile: (301) 527-0661
Email: lglick@fennemorelaw.com

Jacob P. Freeman
999 Third Avenue, Suite 600
Seattle, Washington 98104
Telephone: (206) 749-0500
Facsimile: (206) 749-0600
Email: jfreeman@fennemorelaw.com

*Attorneys for Plaintiff Pit Barrel Cooker Co. LLC*